Filing # 126733086 E-Filed 05/13/2021 10:53:15 AM

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA

Case No.: _____
Division: CIVIL_____

CECILIA DAVIS,

       Plaintiff,

vs.

PINNACLE HEALTH FACILITIES XXIII, LP

       Defendant.
_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff CECILIA DAVIS (hereinafter "Plaintiff"), brings this action for violation of Florida's Whistleblower Act, F.S. § 448.102 against PINNACLE HEALTH FACILITIES XXIII, LP (hereinafter "Defendant"), and alleges as follows:

### PARTIES

1. Plaintiff Cecilia Davis was employed by Defendant from approximately January 2018 to March 8, 2021. She worked out of Defendant's facility named "Tarpon Point Nursing and Rehabilitation Center," located at 5157 Park Club Drive, Sarasota, Florida 34235.

2. Defendant is a foreign limited partnership that owns and controls various nursing home and assisted living facilities throughout the state of Florida and across the United States. They maintain a principal place of business at 5500 W. Plano Parkway, Plano, Texas 75093.

### JURISDICTIONAL ALLEGATIONS

3. The amount in controversy exceeds $30,000.00, excluding interest, costs, and attorney's fees, which is within the jurisdiction of this Court in accordance with Section 26.012, Florida Statutes.

4. Defendant is subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes, because they operate, conduct, engage in, and carry on a business in the state of Florida, have committed a tortious act in the state of Florida, and own property within this State.

5. Venue is proper in the Twelfth Circuit, in and for Sarasota County, pursuant to Section 47.011, Florida Statutes, because the cause of action accrued in this County.

## GENERAL ALLEGATIONS

6. Plaintiff was originally hired by Defendant in or around January 2018 as a Licensed Practical Nurse.

7. During her employment, Plaintiff quickly became an indispensable member of Defendant's staff, and was routinely given overtime hours on a weekly basis. As of January 2021, Plaintiff worked an average of ninety (90) hours per week and had never been subject to any employment related discipline or reprimand.

8. In the year 2020, Plaintiff earned approximately $150,000.00 in wages, earning approximately $26.00 per hour.

9. On January 8, 2021, Plaintiff witnessed one of Defendant's residents push another. The victim's head was struck on the way down, ultimately leading to her death within 1-2 days.

10. Plaintiff, along with most of Defendant's employees, was well aware of the attacking resident's propensity for violence and violent history. A week prior to the January 8 attack, the attacking resident had attacked her former roommate, leaving her with scratches and a black eye. Defendant's managers instructed Plaintiff and other employees to cover up the victim's bruised eye and tell the victim's family that she had scratched herself. This victim was moved to another room, and a new resident took her place.

11. Two days later, the same attacking resident committed a violent act against her new roommate. Employees of Defendant found the attacking resident standing over her new roommate, as if she had just pushed her to the ground.

12. Despite these incidents, no action was taken by Defendant to restrict the attacking resident's access to other residents.

13. Less than a week later, on January 8, 2021, the attacking resident pushed another female resident to her death.

14. After the victim died, a criminal investigation was opened, and several of Defendant's employees were asked to give statements under oath to law enforcement.

15. Plaintiff witnessed the push and fall, and accordingly was asked to give a statement under oath to law enforcement.

16. Prior to giving her statement, Plaintiff was approached by Defendant's administrator, Ryan Johs, who told her the content of his sworn statement, and told Plaintiff what he would like her to say in her sworn statement. The statement Mr. Johs wanted Plaintiff to give was untruthful,

2

inconsistent with the facts, and would have resulted in Plaintiff committing perjury, a third degree felony under Florida Statute § 837.02.

17. Plaintiff gave her sworn statement truthfully, to the best of her recollection, against the directive of Mr. Johs.

18. The day after Plaintiff gave her statement, she received a text from her manager stating that she would no longer be allowed to work the 7:00 A.M. to 3:00 P.M. shift. Plaintiff normally worked this shift each week. This schedule change constituted an adverse employment action and resulted in a massive reduction in Plaintiff's hours and pay. No explanation was provided as to why Plaintiff was disallowed from working this shift.

19. Immediately after giving her sworn statement, Defendant's managers and supervisors began a pattern and practice of harassing, discriminating against, and humiliating Plaintiff while at work. They would routinely chastise her in front of her co-workers for alleged poor performance, tell her that she made the building and facility worse, and that she was incompetent. Merely days before these statements were made, Plaintiff had never been disciplined or reprimanded, and was given ninety (90) hours per week on her schedule.

20. Further, immediately after giving her sworn statement, Plaintiff was subjected to attempts to sabotage her employment and employment record. For example, prior to Plaintiff giving her sworn statement, the nurse working the shift preceding Plaintiff would hand the keys to the narcotics drawer to the supervisor on duty, who would then provide the keys to Plaintiff as she began her shift, so she could perform an inventory of the narcotics at the time her shift began. After Plaintiff gave her sworn statement, the supervisors refused to facilitate the exchange, and the nurse preceding Plaintiff was instructed to simply leave the keys to the narcotics drawer in the logbook for Plaintiff to find. In effect, if any narcotics happened to go missing during the preceding nurse's shift, the disappearance would not be discovered until Plaintiff's shift ended, and accordingly, she would be blamed.

21. In addition, after witnessing a resident sustain the fall that caused her death on January 8, 2021, Plaintiff asked Defendant for their company counseling hotline, which they provided as a benefit of employment to all employees. Initially, Defendant's Human Resources representative provided her the wrong number. When Plaintiff followed up with her supervisor about getting the correct phone number, she was issued a reprimand for doing so. When Plaintiff asked for a copy of the reprimand, Defendant refused to provide it.

22. On March 5, 2021, a co-worker told Plaintiff that Defendant's human resources director, Mike Kuske, wished to see her at the end of her shift. Plaintiff was unable to meet with Mr. Kuske that day because she had an appointment to take her young child to a medical specialist in Gainesville and needed time to make the drive. About three (3) hours after her shift ended, she received a voicemail from Mr. Kuske, in which he stated that she was immediately suspended pending an investigation.

23. On March 8, 2021, Plaintiff received a certified letter in the mail stating that she was being terminated for insubordination.

24. Based on the foregoing allegations, specifically those in paragraphs 6-23, Defendant's reason for terminating Plaintiff's employment is clearly a pretext.

25. Plaintiff's termination was caused by her failure to follow Defendant's directive to give false testimony to law enforcement regarding the death of a resident, the attacking resident's violent propensities, and Defendant's knowledge of those propensities.

26. Defendant retaliated against Plaintiff for failing to give false testimony to law enforcement by (1) significantly reducing her hours (resulting in a substantial reduction in pay) the day after she provided her sworn statement to police; (2) harassing, verbally abusing, and humiliating Plaintiff at work, typically in front of her co-workers; (3) sabotaging Plaintiff's employment status and record by intentionally putting her in positions to receive blame for other employees' mistakes; and (4) by failing to provide her with the phone number for Defendant's company sponsored counseling hotline, and then reprimanding her for requesting the number.

27. Plaintiff has hired the undersigned law firm and agreed to pay them a fee.

28. All conditions precedent to filing this action have been satisfied or waived.

## COUNT I: VIOLATION OF FLA. STAT. § 448.102

29. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-28 above into this Count, as if set out fully and completely herein.

30. Plaintiff was an employee of Defendant within the meaning of Florida Statute § 448.101.

31. Defendant was Plaintiff's employer within the meaning of Florida Statute § 448.101.

32. Plaintiff engaged in statutorily protected expression by providing a statement to law enforcement, under oath, regarding the incident that occurred between two of Defendant's residents on January 8, 2021.

33. Plaintiff suffered the adverse employment actions of (1) a reduction in hours and pay; (2)

employee reprimands; (3) harassment, verbal abuse, and humiliation; and (4) termination.

34. The above listed adverse employment actions were causally linked to Plaintiff's statutorily protected expression.

35. Specifically, Plaintiff was retaliated against and terminated for objecting or refusing to participate in Defendant's request for her to commit perjury in her sworn statement regarding the January 8, 2021 incident.

36. Perjury is a third-degree felony, as dictated by Florida Statute § 837.02.

37. As a result of Defendant's actions, Plaintiff has suffered damages, including back pay, front pay, future lost wages, lost benefits, mental distress, inconvenience, loss of the capacity for the enjoyment of life, and attorneys' fees and costs.

## DEMAND FOR JURY TRIAL

38. Plaintiff demands a trial of this action by jury.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands a jury trial of this action, and further demands judgment against Defendant for the damages requested herein, and for such other and further relief, in law or in equity, to which Plaintiff may be justly entitled.

DATED this 13th day of May, 2021.

Respectfully submitted:

/s/ Nicholas J. Castellano, II
Nicholas J. Castellano, II, Esq.
Florida Bar Number: 0118601
Email: nick@buckmanandbuckman.com

/s/ Y. Drake Buckman, II
Y. Drake Buckman, II, Esq.
Florida Bar Number: 0137634
Email: attorney@buckmanandbuckman.com

**BUCKMAN & BUCKMAN, P.A.**
2023 Constitution Boulevard
Sarasota, FL  34231
Telephone:    (941) 923-7700
Fax:               (941) 923-7736

*Attorneys for Plaintiff*